IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CYNTHIA M. HICKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:17-cv-359-GMB |
| | ) | [WO] |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On September 26, 2013, Plaintiff Cynthia M. Hicks applied for disability insurance benefits under Title II of the Social Security Act, alleging a disability onset date of June 1, 2008. She also applied for Supplemental Security Income Benefits. Hicks' applications for benefits were denied at the initial administrative level. She then requested a hearing before an Administrative Law Judge ("ALJ"). The ALJ held a hearing on April 20, 2016. He denied Hicks' claims on August 3, 2016. Hicks requested a review of the ALJ's decision by the Appeals Council, which declined review on March 30, 2017. The ALJ's decision became the final decision of the Commissioner of the Social Security Administration (the "Commissioner") as of March 30, 2017.

Hicks' case is now before the court for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Under 28 U.S.C. § 636(c)(1) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the full jurisdiction of the undersigned United States Magistrate Judge. Based on its careful review of the parties' submissions, the

relevant law, and the record as a whole, the court concludes that the decision of the Commissioner is due to be AFFIRMED.

## I. STANDARD OF REVIEW

The court reviews a Social Security appeal to determine whether the Commissioner's decision "is supported by substantial evidence and based upon proper legal standards." *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (citation and internal quotation marks omitted). "Even if the evidence preponderates against the Secretary's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). Moreover, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

The substantial evidence standard is met "if a reasonable person would accept the evidence in the record as adequate to support the challenged conclusion." *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988) (quoting *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983)). The requisite evidentiary showing has been described as "more than a scintilla, but less than a preponderance." *Bloodsworth v. Heckler*, 703 F.2d 1233,

1239 (11th Cir. 1983). The court must scrutinize the entire record to determine the reasonableness of the decision reached and cannot "act as [an] automaton[] in reviewing the [Commissioner's] decision." *Hale v. Bowen*, 831 F.2d 1007, 1010 (11th Cir. 1987). Thus, the court must consider evidence both favorable and unfavorable to the Commissioner's decision. *Swindle v. Sullivan*, 914 F.2d 222, 225 (11th Cir. 1990).

The court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Id.* (citing *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)). There is no presumption that the Commissioner's conclusions of law are valid. *Id.*

## II. STATUTORY AND REGULATORY FRAMEWORK

To qualify for disability benefits, a claimant must show the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Hicks bears the burden of proving that she is disabled, and is responsible for producing evidence sufficient to support her claim. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

A determination of disability under the Social Security Act requires a five-step

analysis. 20 C.F.R. § 404.1520(a). The Commissioner must determine in sequence:

(1) Is the claimant presently unable to engage in substantial gainful activity?
(2) Are the claimant's impairments severe?
(3) Do the claimant's impairments satisfy or medically equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
(4) Is the claimant unable to perform her former occupation?
(5) Is the claimant unable to perform other work given her residual functional capacity, age, education, and work experience?

*See Frame v. Comm'r Soc. Sec. Admin.*, 596 F. App'x 908, 910 (11th Cir. 2015). "An affirmative answer to any of the above questions leads either to the next question, or [at] steps three and five, to a finding of disability. A negative answer to any question, other than at step three, leads to a determination of 'not disabled.'" *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986) (quoting 20 C.F.R. § 416.920(a)−(f)). "Once the finding is made that a claimant cannot return to prior work the burden of proof shifts to the Secretary to show other work the claimant can do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citing *Gibson v. Heckler*, 762 F.2d 1516 (11th Cir. 1985)).

## III. FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

Cynthia Hicks was 40 years old at the time of the ALJ's decision. R. 41. She lives in a mobile home with her mother, father, and 13-year-old daughter in Dothan, Alabama. R. 42. Hicks graduated from high school, completed some college, and received her Emergency Medical Technician ("EMT") certification. R. 41–42. Hicks' primary complaints are fibromyalgia, neuropathic pain, osteoarthritis, bulging discs, pinched nerves, digestive problems, heart palpitations, posttraumatic stress disorder ("PTSD"), depression, and anxiety. R. 185. In the past, Hicks worked as an EMT and as a "release of information clerk" in a medical setting. R. 45. As an information clerk, Hicks released

4

medical records to the public when requested, answered the phones, and managed the mail. R. 45. Hicks has not engaged in substantial gainful activity since June 1, 2008. R. 17.

Following an administrative hearing, the ALJ found that Hicks suffers from the following severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c): degenerative changes in the spine, osteoarthritis, fibromyalgia, paroxysmal atrial tachycardia, PTSD, a mood disorder, and gastroesophageal reflux disease ("GERD"). R. 17. However, the ALJ concluded at step three of the analysis that none of Hicks' impairments, nor a combination of her impairments, satisfied or medically equaled the severity of one of those listed in the applicable regulations. R. 18. At steps four and five, the ALJ found that Hicks has the residual functional capacity ("RFC") to perform a full range of unskilled, sedentary work.[1] R. 20. He determined that Hicks is unable to perform any past relevant work. R. 29.

Ultimately, the ALJ determined that, considering Hicks' age, education, work experience, and RFC, there are jobs that she can perform that exist in significant numbers in the national economy. R. 29. Therefore, the ALJ concluded that Hicks is not disabled within the meaning of the Social Security Act. R. 29. Based on these findings, the ALJ denied Hicks' claims. R. 12.

## IV. DISCUSSION

On June 7, 2017, the court entered an order granting Hicks *in forma pauperis* status

---

[1] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. § 404.1567(a).

and directing the parties to file briefs addressing the issues in this case. Doc. 3. Specifically, Hicks was ordered to file a brief containing a section entitled "Statement of the Issues" and to identify in this section each issue she challenges in separately numbered paragraphs. Doc. 3. Hicks was warned that any issue not presented in this section would not be considered by the court. Doc. 3. Hicks did not comply with these formatting directives. Doc. 17.

Nevertheless, the court is mindful of Hicks' *pro se* status, and will not reject her appeal solely on this technicality. Hicks at least attempted to comply with the court's order by filing a neatly handwritten brief setting forth various complaints or "points of interest" (Doc. 17 at 1) about the ALJ's decision. Having carefully and leniently reviewed her brief, the court concludes that Hicks is challenging the ALJ's decision based upon the following issues: (1) whether the ALJ failed to develop the record adequately, (2) whether the ALJ's conclusion that Hicks does not meet any of the listed impairments is supported by substantial evidence, (3) whether the ALJ erroneously rejected the opinions of clinical psychologists Dr. Robert Kline and Dr. William Schiff, and (4) whether the ALJ erred in his assessment of Hicks' residual functional capacity.[2]

A.   **Duty to Develop the Record**

Hicks alleges that the ALJ failed to consider all the evidence in her case because

---

[2] Hicks additionally argues that the Appeals Council refused to look at new evidence she submitted. Doc. 17 at 2. However, the Appeals Council appropriately stated that it did consider the additional evidence. R. 2; *see also Parks ex rel. D.P. v. Comm'r Soc. Sec. Admin.*, 783 F.3d 847, 852 (11th Cir. 2015) (finding that while the Appeals Council is not required to make specific findings of fact it must consider additional evidence that is new, material, and chronologically relevant); *Mitchell v. Comm'r Soc. Sec. Admin.*, 771 F.3d 780, 783 (11th Cir. 2014) (holding that the Appeals Council is not required to provide a detailed discussion of a claimant's new evidence when denying a request for review).

he did not request all available medical records from her health care providers. Doc. 17 at 2. "It is well-established that the ALJ has a basic duty to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ is required to develop a complete medical history for at least the 12 months preceding the claimant's application for disability. 20 C.F.R. § 416.912(d). "Nevertheless, the claimant bears the burden of proving that [s]he is disabled, and consequently, [s]he is responsible for producing evidence in support of [her] claim." *Id.* "In evaluating the necessity for a remand, we are guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931 (11th Cir. 1995) (internal citations omitted).

Here, the ALJ fulfilled his duty to develop the record. The ALJ considered evidence predating Hicks' application for benefits by seven years, and predating her alleged onset date by two years. R. 509–1383. In total, he gathered hundreds of pages of medical evidence spanning from 2006 to 2014. R. 509–1383. When asked at the hearing whether Hicks had any objection to the ALJ's decision based on this evidence, she replied, "Not at all." R. 40–41. Though Hicks contends that she was not aware of what evidence the ALJ considered until after he issued his decision (Doc. 17 at 2), she received a copy of the evidence prior to the hearing date. R. 270–71. The record does not reveal evidentiary gaps, and if Hicks wanted the ALJ to consider additional medical evidence it was up to her to request and produce that documentation. *See Ellison*, 355 F.3d at 1276 (finding that the ALJ "was in no way bound to develop the medical record" after the date of filing for benefits").

Additionally, some of the documents that Hicks alleges the ALJ should have

7

considered are dated after the August 3, 2016 decision. *See* R. 1572–77. An ALJ is only required to consider the evidence that exists at the time of his decision. *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). Thus, the ALJ was not required to assess the medical records prepared after August 3, 2016. The court finds that the ALJ adequately developed the record in Hicks' case.

**B.     The Listings**

Hicks contends that the ALJ erred in his determination that she does not meet or medically equal any of the disability listings. Doc. 17. Though the ALJ did find that Hicks suffers from several severe impairments, that finding or a diagnosis alone is not enough to satisfy the listings.

   *1.     Mental Impairment*

Hicks alleges that she meets the listings for depression, anxiety, and trauma related disorders. Doc. 17 at 9. To qualify as disabled at step 3, a claimant must meet one of the Social Security Act's impairment listings. *Frame*, 596 F. App'x at 910. The listings for depression (12.04), anxiety (12.06), and trauma related disorders (12.15) each include three paragraphs designated as paragraphs A, B, and C. 20 C.F.R. Pt. 404, Subpt. P, App. 1. In order to meet any of these listings, a claimant must meet the criteria of either paragraphs A and B or paragraphs A and C. *Id.* Paragraph A lists medical symptoms that must be present in the claimant's medical evidence. *Id.* § 12.04(A). Paragraph B requires extreme limitation of one, or marked limitation of two, of the following abilities: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 12.04(B). Paragraph C requires that a claimant

8

have a medically documented history of the existence of a disorder for over two years. *Id.* § 12.04(C). When a claimant has presented a colorable claim of mental impairment, an ALJ must consider the impact of the claimant's mental impairments on four functional areas: (1) restriction of activities of daily living; (2) difficulties in maintaining social functions; (3) difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. *Moore v. Barnhart*, 405 F.3d 1208, 1213–14 (11th Cir. 2005). Repeated episodes are defined as three episodes within one year or an average of one every four months, each episode lasting at least two weeks. 20 C.F.R. Pt. 404, Subpart P., App. 1 § 12.00.

Hicks asserts that she meets the Paragraph A criteria for depression and anxiety. Doc. 17 at 9. However, Hicks also must meet the Paragraph B or Paragraph C criteria. She does not appear to do so. *See* R. 19.

As to the Paragraph B criteria, Hicks first alleges that the ALJ erred in concluding that she was only mildly restricted in the activities of daily living. Doc. 17 at 3–4. The ALJ reached this conclusion by relying on her Function Report, where she indicated that she can accomplish "[g]eneral daily things" such as cooking simple meals; helping with household chores; bathing, shaving, and feeding herself; and handling her finances. R. 18 & 241–43. Substantial evidence supports the ALJ's finding that Hicks is only mildly restricted in the activities of daily living.

Next, Hicks contends that the ALJ erred in finding only mild difficulties in her social functioning. Doc. 17 at 4. In her Function Report, Hicks reported that she rarely talks on the phone with others or congregates in person. R. 244. She indicated that she was often

9

social before her disabilities, but due to pain, embarrassment, and time, she is rarely social now, and that her social anxiety continues to become more severe. R. 244 & 246. She also reported that if anything abnormal happens, her depression and anxiety worsen and she becomes a recluse. R. 246.

However, the ALJ highlighted that Hicks reported that she could go out alone and that she daily uses Facebook. R. 19. He also noted that Hicks attends her daughter's practices and games. R.19. And she admitted that she gets along "pretty decent" with authority figures and that her condition does not affect her ability to get along with others. R. 19. Considering that the court may not "reweigh the evidence," the court finds that substantial evidence supported the ALJ's finding that Hicks suffers mild difficulties in social functioning. *Miles*, 84 F.3d at 1400 (holding that the court "may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence").

Hicks also asserts that she suffers from more than moderate difficulties in concentration, persistence, and pace because pain and fibromyalgia affect her memory and she loses concentration when she gets anxious. Doc. 17 at 4. Additionally, she claims that her problems with concentration, persistence, and pace are "going to go up." Doc. 17 at 4. Because the court will review only the evidence available to the ALJ prior to his decision, the assertion that Hicks' troubles will worsen cannot be considered. *Ellison*, 355 F.3d at 1276; *Moore*, 405 F.3d at 1213. In his decision, the ALJ noted that Hicks uses alarms, a calendar, and labels to remind herself to take care of bills, groceries, and medication. R. 19

& 241. The ALJ noted that she can pay bills, count change with some physical difficulty, and handle financial transactions and accounts. R. 19 & 242. Hicks also admitted that she can pay attention depending on the level of distractions in her environment, and that she sometimes finishes what she starts. R. 19. The ALJ noted that Hicks can follow simple verbal instructions and some written instructions. R. 19 & 244. In total, there is substantial evidence to support the ALJ's decision that Hicks suffers only moderate difficulties in concentration, persistence, and pace.

Hicks further claims that she has suffered multiple episodes of decompensation. Doc. 17 at 5. However, Hicks has not identified any portion of her medical records that provides support for her claim of repeated episodes of decompensation.

Lastly, Hicks attacks the ALJ's findings regarding her mental impairments by pointing to evidence of physical limitations. Doc. 17 at 3 & 5. Specifically, Hicks alleges that she has suffered episodes of decompensation "both mentally and physically" (Doc. 17 at 5), and that she is more than mildly restricted in the activities of daily living because chronic and worsening physical conditions allow her to accomplish only small, lightweight tasks. Doc. 17 at 3. However, under the listings for depression, anxiety, and trauma-related disorders, the ALJ is tasked with determining only the effects of Hicks' mental impairments, not the effects of her physical impairments. *See Moore*, 405 F.3d at 1213. Thus, these arguments are not material to the ALJ's finding that Hicks does not satisfy any of the mental impairment listings.

The ALJ concluded that Hicks did not satisfy the Paragraph C criteria, and Hicks does not appear to contest this assertion. R. 19. The ALJ's findings regarding her mental

impairment were supported by substantial evidence.

## 2. *Physical Impairment*

Hicks alleges that she satisfies the 1.00 Musculoskeletal System criteria because she suffers from a number of back issues. Doc. 17 at 5. However, this section is explanatory material, not a listing. *Arrington v. Soc. Sec. Admin.*, 358 F. App'x 89, 93 (11th Cir. 2009); 20 C.F.R. Pt. 404, Subpt. P, App. 1. The court will assume that Hicks, a *pro se* plaintiff, intended to argue that she satisfies Listing 1.04, Disorders of the spine. As the claimant, Hicks bears the burden of showing a medically determinable impairment. *Brown v. Yuckert*, 482 U.S. 137, 146 (1987). To meet the listing for a disorder of the spine, Hicks must satisfy the criteria of one of the following three paragraphs:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. The ALJ determined that Hicks does not meet any physical impairment listing because she did not present "any medical findings arising from the application of medically acceptable clinical or laboratory diagnostic techniques

12

that prove that her musculoskeletal . . . impairments meet or equal a listing." R. 18. The ALJ also concluded that no acceptable medical sources opined that Hicks's condition met or medically equaled a listing. R. 18. Although Hicks has presented documentation of pain and back issues (R. 811, 1165, 1177 & 1192), she has not presented evidence demonstrating that she meets or medically equals Listing 1.04. For example, an X-ray conducted in September 2006 revealed potential spondylosis and muscle spasms but without radiographic significance. R. 1165. An MRI in October 2006 revealed minimal disc bulging without significant canal stenosis or neural foraminal narrowing. R. 811. X-rays of the spine in 2007, 2010, and 2011 also revealed no significant findings. R. 781, 801 & 1042. For this reason, there is substantial evidence to support the ALJ's findings.

C. **Opinions of Clinical Psychologists**

Hicks asserts that several doctors determined that she was disabled or unable to work, and that the ALJ ignored the opinions of these doctors. Doc. 17 at 2 & 11. Specifically, she points to the opinions of clinical psychologists Dr. Schiff and Dr. Kline. Doc. 17 at 11. "In evaluating medical opinions, the ALJ considers many factors, including the examining relationship, the treatment relationship, whether the opinion is amply supported, whether the opinion is consistent with the record and the doctor's specialization." *Kelly v. Comm'r Soc. Sec. Admin.*, 401 F. App'x 403, 407 (11th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d) & 416.927(d)). The opinions of examining physicians are given more weight than those of non-examining physicians, and the opinions of treating physicians are given substantial weight unless the ALJ shows good cause for not doing so. *See id.* In any event, "the ALJ must state with the particularity the weight given to different

medical opinions and the reasons therefor." *Winschel v. Comm'r Soc. Sec. Admin.*, 631 F.3d 1176, 1179 (11th Cir. 2011). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence. *Id.* (internal citation omitted). The court cannot affirm the ALJ's decision "simply because some rationale might have supported the ALJ's conclusion." *Id.* (internal citation omitted). However, "the ultimate determination of disability is reserved for the ALJ." *Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923 (11th Cir. 2007).

The ALJ appropriately considered the opinions of the clinical psychologists for two reasons. First, the ALJ was not required to defer to Dr. Schiff's opinion that Hicks was unable to work because that determination is reserved to the ALJ. *Id.*; R. 24. Second, the ALJ provided his rationale, supported by substantial evidence, for affording the opinion of Dr. Kline little weight. R. 26–29. The ALJ assigned little weight to Dr. Kline's opinion that Hicks' psychiatric issues would interfere with her ability to perform simple repetitive tasks, remember and follow directions, or interact appropriately with coworkers, supervisors, and the public. R. 26. The ALJ noted that, despite this opinion, Dr. Kline's notes reflect that Hicks' thought expression was rational and logical, she was able to concentrate during the interview without distraction, and there was no significant decline in attention as the interview progressed. R. 26 & 1491. The ALJ considered the fact that Hicks denied any significant or bothersome memory problems and was able to remember three words without difficulty after 15 minutes. R. 26 & 1491. Additionally, the ALJ highlighted that Hicks' attitude was consistent and polite, and that she reported that

14

medication was effective in managing her symptoms. R. 26 & 1490. The ALJ also assigned little weight to Dr. Kline's Global Assessment of Function ("GAF") score, because Dr. Kline did not clearly explain the reasons behind the GAF score or the period to which the score applied. R. 27. Accordingly, the court finds that the ALJ provided sufficient reasoning, backed by substantial evidence, to afford only little weight to the opinions of Dr. Kline and Dr. Schiff.

**D.     RFC**

Hicks contends that the ALJ erred in his assessment of her RFC and maintains that "there are no available jobs to accommodate [her] needs." Doc. 17 at 12. "[T]he ALJ has the responsibility for determining a claimant's RFC." *Castle v. Colvin*, 557 F. App'x 849, 853–54 (11th Cir. 2014) (citing 20 C.F.R. § 404.1546(c)). "To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has provided a sufficient rationale to link substantial record evidence to the conclusions reached." *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citation and internal quotation marks omitted). There is no requirement that the RFC determination "be supported by the assessment of an examining or treating physician." *Id.* at 1055–56. Nor is it required for the ALJ to "specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Packer v. Comm'r Soc. Sec. Admin.*, 542 F. App'x 890, 891–92 (11th Cir. 2013).

The ALJ provided enough reasoning for this court to conclude that he considered

Hicks' medical condition as a whole. After considering Hicks' testimony at the hearing, her Function Report, and her medication list, the ALJ found that her medically determinable impairments could be expected to cause some of her alleged symptoms. R. 20–21. However, the ALJ determined that the intensity, persistence, and limiting effects of her symptoms were not enough to limit her functioning in the workplace entirely. R. 21. While acknowledging that Hicks suffered from mild abnormalities in the knees, the ALJ reasoned that Hicks could perform sedentary work because her gait has been described as normal, no balance or coordination abnormalities were noted, and she was never prescribed narcotics or a cane to alleviate her pain. R. 22. Despite also finding that Hicks suffered from some physical abnormalities in her back, the ALJ explained that a 2007 lumbar x-ray examination revealed no significant findings, that no muscle spasms were identified, that straight leg raise tests were negative, and that a 2011 lumbar x-ray revealed no acute abnormality. R. 22. The ALJ highlighted that Hicks' symptoms appeared treatable, as her fibromyalgia responded to Elavil, her depression was somewhat helped by Effexor, and she reported that her pain symptoms improved after various visits to the doctors. R. 23. The ALJ evaluated the medical opinions of many of Hicks' doctors, as well as the Third-Party Function Report submitted by Hicks' mother, and explained his reasoning for the weight he afforded that evidence. R. 20–28. The court finds that the ALJ provided more than a sufficient basis to link substantial record evidence to his conclusion that Hicks could perform unskilled, sedentary work.

## V. CONCLUSION

Therefore, based on the foregoing, the undersigned concludes that the

Commissioner's decision is supported by substantial evidence and based upon the proper legal standards. It is ORDERED that the decision of the Commissioner denying benefits is AFFIRMED.

A final judgment will be entered separately.

DONE this 9th day of October, 2018.

/s/ Gray M. Borden
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE